UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA CAPITAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>REPUBLIC UNDERWRITERS INSURANCE COMPANY,<br><br>Defendant. | Case No. 19-cv-02141-SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 28 |

Defendant Republic Underwriters Insurance Company ("Republic") has filed a motion for summary judgment. Pursuant to Civil Local Rule 7-1(b), General Order No. 72, and the undersigned's scheduling Notice dated March 19, 2020, the Court finds this matter suitable for resolution on the papers and VACATES the hearing set for April 17, 2020. For the reasons set forth below, the Court GRANTS Republic's motion for summary judgment.

**BACKGROUND**

On March 14, 2019, plaintiff California Capital Insurance Company ("California Capital"), on its own behalf and as assignee of The Golf Club at Boulder Ridge, LLC, filed this lawsuit in Santa Clara County Superior Court against defendant Republic. Republic removed the case to this Court on April 19, 2019. Dkt. No. 1, Compl. The complaint alleges that on July 2, 2014, the date of the underlying incident, Republic insured The Golf Club at Boulder Ridge under a Workers Compensation policy and that California Capital insured The Golf Club at Boulder Ridge under Commercial General Liability Coverage. *Id.* ¶¶ 6-7.

## I. The *Schrick* Lawsuit

The background facts of this case are not in dispute. The complaint alleges that "[o]n July 2, 2014, Alexander Schrick, an employee of The Golf Club at Boulder Ridge, was injured while exercising a benefit of his employment at The Golf Club at Boulder Ridge, when his coworker George Talaat struck him in the head with a golf club when taking a full swing, causing Schrick serious injuries."[1] *Id.* ¶ 8. The parties agree that on the day Schrick was injured, Schrick was not working. As a benefit, the Golf Club at Boulder Ridge permitted its employees to golf in the afternoons on certain days of the week. Alfonzo Decl., Ex. 1 at 10.[2] On that particular day, Schrick had reserved a 4:30 p.m. tee time to play golf with his father. *Id.* at 12; Dkt. No. 30, Req. Jud. Not., Ex. F ("Schrick Dep.") at 88:18-21.[3]

After Schrick filed a claim for workers' compensation, Republic's workers' compensation administrator found that Schrick's injury did not result from his employment at The Golf Club at Boulder Ridge and denied the claim by letters dated September 29, 2014, and November 18, 2014. Dkt. No. 28-2, Calderwood Decl. ¶¶ 5-7 & Ex. S, U.[4]

On June 12, 2015, Schrick filed a first amended complaint in Santa Clara County Superior Court, bringing a claim for negligence against The Golf Club at Boulder Ridge and against Talaat ("the *Schrick* lawsuit"). Dkt. No. 30, Req. Jud. Not., Ex. A ("*Schrick* Compl.").[5] Schrick alleged:

---

[1] From documents submitted in support of the motion for summary judgment, it appears Schrick's name was in fact Alessandro and that he at times went by "Alex." California Capital's opposition brief to the motion for summary judgment also erroneously lists the date of the incident as June 2, 2014, but the documents it files in support of its brief show that the incident occurred on July 2, 2014. *See* Dkt. No. 31, Opp'n at 5, 8; Dkt. No. 31-1, Alfonzo Decl., Ex. 1.

[2] For ease of reference, citations to the docket refer to the page numbers stamped at the top of the page by the Court's Electronic Case Filing system.

[3] The Schrick deposition appears to have been taken in the underlying lawsuit, not in this lawsuit. Both parties rely on this deposition testimony to support their arguments here.

[4] It is unclear whether Schrick pursued the denial with the Workers' Compensation Appeals Board. California Capital states that he did, but cites no evidence showing this. *See* Opp'n at 5. Republic states that he did not. *See* Calderwood Decl. ¶ 10 & Ex. X.

[5] Republic seeks judicial notice of a number of documents filed in connection with the underlying *Schrick* lawsuit: the first amended complaint; the parties' briefing on The Golf Club at Boulder Ridge's motion for summary judgment; and the superior court's order denying the motion for summary judgment. Dkt. Nos. 29, 30. California Capital does not object to the request for

> On July 2, 2014, at approximately 5:00 p.m., plaintiff, ALESSANDRO J. SCHRICK, was hitting golf balls on the driving range located at The Golf Club at Boulder Ridge, LLC, dba The Golf Club at Boulder Creek, Boulder Creek Golf Club. At said time and place and during said activity, plaintiff was struck in the left side of the head by defendant GEORGE TALAAT, who had taken plaintiff's golf club out of his hands and while showing him the proper hand grip on said golf club, took a full golf swing therewith, striking plaintiff in the head as herein described. Due to said defendant GEORGE TALAAT's conduct, plaintiff suffered serious physical and psychological injury.

*Id.* at 4.

According to the complaint filed in this case, California Capital agreed to defend The Golf Club at Boulder Ridge in the *Schrick* lawsuit under reservation of rights. Compl. ¶ 12. Neither party disputes the allegation "that Schrick, The Golf Club at Boulder Ridge and California Capital each did tender the *Schrick* claim and/or the *Schrick* lawsuit to Republic Underwriters but that Republic Underwriters denied coverage under its policy for Workers' Compensation benefits and under the Republic Underwriters [Employers'] Liability coverage." *See id.* ¶ 13; *see also* Alfonzo Decl. ¶¶ 2-3. California Capital funded a settlement of $500,000 to resolve the *Schrick* lawsuit, and The Golf Club at Boulder Ridge assigned to California Capital "all claims and causes of action which it may now have against Republic Underwriters based upon their failure and/or refusal to defend or indemnify [The Golf Club at Boulder Ridge] in connection with the *Schrick* lawsuit." Dkt. No. 28-3, Blumhardt Decl., Ex. CC.

In this suit, California Capital brings four claims for relief against Republic: (1) reimbursement; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; and (4) declaratory relief. California Capital states that "the *Schrick* lawsuit alleged damages that were excluded by the California Capital policy and covered by the Republic Underwriters' policy" and it therefore "seeks an equitable contribution from Republic Underwriters

---

judicial notice and indeed relies on certain of these documents in its opposition brief. The Court GRANTS the request for judicial notice with the caveat that it does not take judicial notice of the truth of any facts contained within the documents. *See* Fed. R. Evid. 201; *Marsh v. San Diego Cnty.,* 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006) (While "a court may take judicial notice of the existence of matters of public record, such as a prior order or decision," it should not take notice of "the truth of the facts cited therein.") (citations omitted). To the extent the Court cites to facts contained within the documents judicially noticed, it does so for background purposes only.

towards defense costs and indemnity payments made in connection with the *Schrick* lawsuit given the potential for coverage that existed under the Republic Underwriters policy." Compl. ¶¶ 16, 18.

## II. The Republic Policy

At the time of the incident, Republic insured The Golf Club at Boulder Ridge under a Workers Compensation and Employers Liability Insurance Policy, No. ATW 000884-02. Calderwood Decl., Ex. P. Part One of the policy provides, in part:

**PART ONE**
**WORKERS COMPENSATION INSURANCE**

**A. How This Insurance Applies**
This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.
. . .

**B. We Will Pay**
We will pay promptly when due the benefits required of you by the workers compensation law.

**C. We Will Defend**[6]
We have the right and duty to defend at our expense any claim or proceeding against you before the California Workers' Compensation Appeals Board or its equivalent in any other state (and any appeal of a decision therefrom) for the benefits payable by this workers' compensation insurance. We have the right to investigate and settle claims or proceedings.

We have no duty to defend a claim, proceeding, or suit that is not covered by this insurance.
. . .

*Id.* at 7, 13.

Part Two of the policy provides, in part:

---

[6] The Republic policy contains a policy amendment to Part One, Section C. The language quoted here is from the amended section. *See* Calderwood Decl., Ex. P at 13.

4

**PART TWO**
**EMPLOYERS LIABILITY INSURANCE**

**A. How This Insurance Applies**[7]
This employers' liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury means a physical injury, including resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in California.

3. Bodily injury by accident must occur during the policy period.
. . .

**B. We Will Pay**
We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.
. . .

**C. Exclusions**
This insurance does not cover:
. . .
4. Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;
. . .

**D. We Will Defend**
We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.
. . .

*Id.* at 8-9, 16.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file,

---

[7] The Republic policy contains a policy amendment to Part Two, Section A. The language quoted here is from the amended section. *See* Calderwood Decl., Ex. P at 16.

5

and any affidavits show there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

For summary judgment, the Court must view evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . ." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Parties must present admissible evidence. Fed. R. Civ. P. 56(c).

**DISCUSSION**

Republic moves for summary judgment, arguing that it had no duty to defend or indemnify The Golf Club at Boulder Ridge in the *Schrick* lawsuit under either the Workers Compensation (Part One) or Employers Liability (Part Two) policies that Republic provided. Dkt. No. 28-1, Mot. at 12. If the Court does not grant summary judgment as to the entire action, Republic alternatively seeks "an order adjudicating and entering judgment as to the second cause of action for breach of contract, and the third cause of action for breach of the covenant of good faith and fair dealing, for the reason

that in bringing such causes of action as the assignee of Boulder Ridge, the causes of action lack an essential element, i.e., damages suffered by the plaintiff's assignor." Dkt. No. 28, Not. of Mot. at 2.

The central question that the parties dispute is whether Republic owed a duty to defend or indemnify The Golf Club at Boulder Ridge in the *Schrick* lawsuit and therefore whether Republic must reimburse any costs of the defense or of the settlement. California Capital forwards no argument that Republic owed a duty to defend or indemnify under the Workers Compensation part of its policy.[8] Instead, California Capital focuses on the Employers Liability part. It argues that

> [a]lthough Mr. Schrick was not working at the time of his injury, there was a close connection between his injury and his employment and there is case authority that injuries that occur during recreational activities can be considered within the course and scope of employment for purposes of workers' compensation benefits. In these circumstances, the *Schrick* lawsuit presented at least the *potential* for recovery of damages covered by the Republic Employers Liability coverage. That is all that is required to trigger a duty to defend and participate.

Dkt. No. 31, Opp'n at 6.

"A liability insurer's duty to defend will arise when a suit against an insured *potentially* seeks damages within the coverage of the policy. An insurer, however, need not defend if the third party complaint cannot, *by any conceivable theory*, raise a single issue which would bring it within policy coverage. Thus, the settled rule is that where a pleading against the insured raises the *potential* for coverage, the insurer must provide a defense. In order to prevail on a motion for the summary adjudication of the duty to defend, 'the insured need only show that the underlying claim *may* fall within coverage; the insurer must prove it *cannot*.'" *Atl. Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1032 (2002) (internal citations omitted, quoting *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal. 4th 287, 300 (1993)). "The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of

---

[8] It is well established that "[t]he civil and workers' compensation systems are distinct. Therefore, there is no potential coverage under a workers' compensation policy for damages awardable in a civil action." Hon. H. Walter Croskey et al., California Practice Guide: Insurance Litigation § 7:1927.1 (2019) (citing *La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal. 4th 27, 42-43 (1994); *Transamerica Ins. Co. v. Super. Ct.*, 29 Cal. App. 4th 1705, 1715 (1994)).

7

the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Id.* at 1033 (citations omitted).

California Capital argues that there was a potential for coverage of the *Schrick* lawsuit under Republic's Employers Liability policy. California Capital relies on two cases: *Reinert v. Industrial Accident Commission*, 46 Cal. 2d 349 (1956), and *Winter v. Industrial Accident Commission*, 129 Cal. App. 2d 174 (1954). *See* Opp'n at 15-16. There are several problems with this reliance. First, as Republic notes, the cases pre-date the enactment of the workers' compensation provision now codified at California Labor Code Section 3600(a)(9). Section 3600(a) outlines the conditions that must concur for an employee to obtain workers' compensation. In 1978, the California legislature added what is now subdivision (a)(9). *City of Stockton v. Workers' Comp. Appeals Bd.*, 135 Cal. App. 4th 1513, 1519 n.1 (2006). It states, in relevant part, that workers' compensation is not available if the injury "arise[s] out of voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the employee's work-related duties, except where these activities are a reasonable expectancy of, or are expressly or impliedly required by, the employment. . ." Cal. Lab. Code § 3600(a)(9). "[. . . S]ubdivision (a)(9) is not intended to replace the basic requirement that to be compensable, (1) an injury must occur while the employee is performing service growing out of and incidental to his or her employment and acting in the course of employment, and (2) the employment must be the proximate cause of the injury. Subdivision (a)(9) was intended to limit, rather than to expand, the scope of liability that an excessively liberal application of the basic test might support." *City of Stockton*, 135 Cal. App. 4th at 1524 (internal citations omitted). Accordingly, it is unclear whether the courts would have found workers' compensation available in *Reinert*—in which a Girl Scout camp counselor was thrown from a horse while riding during her free time—or in *Winter*—in which a caddy injured another caddy while golfing at the employer's golf course on a day off—subsequent to the enactment of subdivision (a)(9).

Second, and more fundamentally, the cases on which California Capital relies examined whether workers' compensation benefits were properly denied to the employees. Here, the question is not whether Republic properly rejected Schrick's claim for workers' compensation benefits, but

8

whether Republic's Employers Liability policy provided any potential coverage for damages in Schrick's civil suit against The Golf Club at Boulder Ridge. The Court concludes that it did not. "[. . . E]mployers' liability insurance is traditionally written in conjunction with workers' compensation policies, and is intended to serve as a 'gap-filler,' providing protection to the employer in those situations where the employee has a right to bring a tort action despite the provisions of the workers' compensation statute or the employee is not subject to the workers' compensation law.[] Generally, these two kinds of coverage are mutually exclusive. Most employers' liability policies limit coverage to liability for which the insured is held liable *as an employer.*" *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903, 916 (1986) (internal citations omitted). In other words, employers' liability coverage applies "in those relatively rare situations where the employee has the right to bring a *civil action* against the employer for *conduct outside the normal risk of employment* (e.g., violence or false imprisonment . . . .) or where the employee is not subject to the workers' compensation law." Hon. H. Walter Croskey et al., California Practice Guide: Insurance Litigation § 7:1936 (2019).

In *Culligan v. State Compensation Insurance Fund*, 81 Cal. App. 4th 429 (2000), the California Court of Appeal examined an employers' liability policy containing similar language to that contained in the Republic policy here.[9] There, three former employees sued the insured employer in superior court, alleging they were terminated for having complained about noxious fumes at the workplace. Two of the plaintiffs had pursued and received workers' compensation for the injury from the fumes themselves; the third plaintiff had not. The workers' compensation and employers' liability insurer refused to defend the civil lawsuit. The Court of Appeal rejected the employer's argument that under the employers' liability policy the insurer should have defended the lawsuit as to the employee who had not pursued workers' compensation. The appellate court

---

[9] The employers' liability policy in *Culligan* covered "bodily injury by accident or bodily injury by disease . . . caused or aggravated by the conditions or your employment" such that the insurer would pay "all sums you legally must pay as damages because of bodily injury to your employees eligible for benefits under this policy, provided the bodily injury is covered by this employer's liability insurance." 81 Cal. App. 4th at 435-36. The policy contained various exclusions, including for "any obligation imposed by a worker' compensation . . . law . . . ." *Id.* at 436.

9

affirmed summary judgment in favor of the insurer. In so doing, the court explained,

> Culligan cites no case holding that exclusionary language like that used here- "any obligation imposed" by workers' compensation- comes into play only where an employee has actually applied for or obtained benefits, and we find that construction unreasonable in light of the policy as a whole and the public policy . . . .
>
> Part 1 [Workers Compensation] then covers *actual* benefit obligations incurred. Part 2 [Employers Liability] covers situations where the employee, while not "excluded" from the workers' compensation system, may not be required to use it exclusively (cf. *La Jolla, supra,* 9 Cal.4th at p. 36, 36 Cal.Rptr.2d 100, 884 P.2d 1048). Under Culligan's construction, that structural distinction would be lost, for an employee required by the exclusivity rule to use only workers' compensation could simply choose not to use it and consequently create a duty to defend. The cost limits of the compensation bargain would be lost, all at the whim of the employee.

*Id.* at 439; *see also Transamerica Ins. Co. v. Super. Ct.*, 29 Cal. App. 4th 1705 (1994) (vacating trial court's summary adjudication on whether the insurer owed a duty to defend a civil suit and instead finding there was no coverage for defense of the civil suit under the employers' liability policy).

In sum, *Culligan* clarified that the workers' compensation exclusivity provisions apply whether or not the employee actually seeks or actually is awarded such compensation. Here, the fact that Schrick did not receive workers' compensation is not determinative. Republic's duty to defend in the civil suit does not rest on whether Schrick sought or was awarded workers' compensation.

The Court agrees with Republic that California Capital's attempt to show a potential for coverage under the Employers Liability policy relies on circular reasoning. California Capital appears to acknowledge that the Workers Compensation part of the Republic policy would not cover the *Schrick* lawsuit. Yet the Employers Liability part applies to "bodily injury by accident or bodily injury by disease[,]" and "[t]he bodily injury must arise out of and in the course of the injured employee's employment by [the insured]." Calderwood Decl., Ex. P at 8. But nothing about the undisputed facts presented here raises the potential that, if Schrick's injury did occur in the course and scope of his employment, it would fall outside the provisions of the Workers' Compensation policy such that Employers Liability coverage would be available. California Capital's construction would mean that an insurer would have to defend any subsequent civil action brought by an employee whose workers' compensation claim had been denied. This is precisely the type of argument the *Culligan* court rejected.

10

Here, there was no potential coverage of the claims asserted in the *Schrick* lawsuit under either the Workers' Compensation or the Employers Liability part, and so Republic owed no duty to defend or indemnify.

All of California Capital's claims in this action (for reimbursement, breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief) depend on Republic owing a duty to defend or indemnify The Golf Club at Boulder Ridge in the *Schrick* lawsuit. Republic has shown there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Accordingly, the Court GRANTS Republic's motion for summary judgment. The Court need not reach Republic's alternative argument that the claims for breach of contract and breach of the covenant of good faith and fair dealing fail for lack of damages.

## CONCLUSION

For the reasons stated above and for good cause shown, the Court hereby GRANTS defendant's motion for summary judgment.

**IT IS SO ORDERED**.

Dated: March 27, 2020

_____
SUSAN ILLSTON
United States District Judge